UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

COLLIER HMA PHYSICIAN
MANAGEMENT, LLC and NAPLES
HMA, LLC, a Florida limited liability
company

        Plaintiffs,

v.                                Case No:  2:18-cv-408-FtM-38MRM

NCH HEALTHCARE SYSTEM, INC.,
NAPLES COMMUNITY HOSPITAL,
INC. and NCHMD, INC.,

        Defendants.

_____/

### OPINION AND ORDER[1]

Before the Court is Defendants NCH Healthcare System, Inc. ("NCH Healthcare"),

Naples Community Hospital, Inc. ("NCH Hospital"), and NCHMD, Inc.'s ("NCHMD")

Motion to Dismiss (Doc. 24) filed on August 13, 2018.  Defendants have also filed three

Requests for Judicial Notice (Docs. 26; 38; 39).  Plaintiffs Collier HMA Physician

Management, LLC ("Collier HMA") and Naples HMA, LLC ("Naples HMA") filed a

Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 33) on September

21, 2018, to which Defendants filed a Reply on October 15, 2018 (Doc. 40).  Plaintiffs

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

then filed a Sur-Reply (Doc. 43) on October 29, 2018. For the following reasons, the Court (a) grants in part and denies in part Defendants' motion to dismiss (Doc. 24) and (b) grants in part and denies in part Defendants' requests for judicial notice (Docs. 26; 38; 39).

## BACKGROUND[2]

This is an action for tortious interference, conspiracy, unfair competition, and deceptive and unfair trade practices under Florida law. (Doc. 9). Collier HMA, which does business as Physicians Regional Medical Group ("PRMG"), is a multi-specialty physician practice group. (*Id.* at ¶ 10). PRMG is affiliated with Naples HMA, which does business as Physicians Regional Healthcare System ("Physicians Regional") and two local hospitals: Physicians Regional Medical Center-Pine Ridge and Physicians Regional Medical Center-Collier Boulevard (collectively, "Physicians Regional Hospitals"). (*Id.* at ¶¶ 10-11).

To staff its facilities, Physicians Regional recruits physicians through its employment arm, PRMG. (*Id.* at ¶14). PRMG employs both primary care providers and specialists, who refer patients to each other and to Physicians Regional Hospitals, as needed. (*Id.* at ¶ 15). Each new hire is required to sign a contract with PRMG, which contains a non-compete clause that prevents physicians from working for a direct competitor for a one-year period after the contract has ended. (*Id.* at ¶¶ 17-18). Physicians Regional's direct competitor in the Naples, Florida market is NCH Healthcare.

_____

[2] The Court recounts the factual background as pled in Plaintiffs' Amended Complaint, which it must take as true to decide whether the Amended Complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

(*Id.* at ¶ 19).   NCH Healthcare, like Physicians Regional, provides hospital services through its affiliated hospital, NCH Hospital, and recruits physicians through its employment arm, NCHMD.  (*Id.* at ¶ 30).

Plaintiffs contend, nearly six years ago, Defendants unlawfully recruited and hired the following physicians in violation of their employee contracts with PRMG:

- Bryan Murphey, M.D.

- Joseph Stafford, M.D.

- Brian Menichello, M.D.

- Monica Menichello, M.D.

- Natasha Choyah, M.D.

- Paul Rubinton, M.D.

- Carlos Portu, M.D.

(collectively, the "PRMG physicians"). (*Id.* at ¶ 28).   Specifically, Plaintiffs assert Defendants devised a scheme to recruit these physicians once Physicians Regional had expended great resources to hire them and establish their practices in the Naples, Florida market.  (*Id.* at ¶ 31).   As part of the scheme, Defendants advised these physicians, through legal counsel, that PRMG and its affiliates could not enforce the non-compete clause and thus induced them to breach their contractual agreements.  (*Id.* at ¶ 35; ¶ 36). Plaintiffs maintain, as a result of Defendants' unlawful actions, they suffered a loss of patients, goodwill, and confidential business information.  (*Id.* at ¶ 53; ¶ 60; ¶ 67; ¶ 74; ¶ 79; ¶ 82).

As its first line of attack, Collier HMA filed suit against Drs. Murphey, Stafford, and Brian and Monica Menichello in Florida state court for temporary and permanent

injunctive relief based upon breach of contract. (*Id.* at ¶ 44). Non-party, NCHMD, intervened in the suit as a party defendant. (Doc. 26-8 at 1-2). The trial court denied Collier HMA's motion for temporary injunction and ultimately entered summary judgment in favor of the physicians on the theory that the restrictive covenant was unenforceable because Collier HMA was a 'successor' employer and the employment agreement did not expressly authorize enforcement of the covenant by an assignee or successor[.]" *Collier HMA Physician Mgmt., LLC v. Menichello*, 223 So. 3d 334, 335 (Fla. 2d DCA 2017). (Docs. 26-9; 26-11). Collier HMA appealed both rulings. *See id.* at 337. The appellate court affirmed the trial court's denial of temporary injunction but reversed the court's decision to enter summary judgment in favor of the physicians. *See id.* at 337, 342. Specifically, the appellate court held that Collier HMA was not a successor under Florida law and, therefore, could enforce the non-compete clause. *See id.* at 342. The appellate court remanded the case back to the trial court level for further proceedings. *See id.* These state actions remain ongoing.

Now, Collier HMA and Naples HMA sue NCH Healthcare, NCH Hospital, and NCHMD for the unlawful acts leading up to the physicians' breach of contract. Defendants move the Court to (1) take judicial notice of several court filings in the underlying state actions and (2) dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Docs. 24; 26; 38; 39). The Court addresses each motion below, starting with Defendants' requests for judicial notice.

## STANDARDS OF REVIEW

Courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Furthermore, the "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992)). Thus, judicial notice of related court cases can only be taken for two limited purposes: either to recognize the judicial act that the order represents or the subject matter of the litigation. See Allstate Ins. Co. v. Estate of Robert M. Levesque, Case No. 8:08-cv-2253-T-33EAJ, 2010 WL 2978037, *1 (citing Jones, 29 F.3d at 1553; In re Delta Res., Inc., 54 F.3d 722, 725-26 (11th Cir. 1995); Johnson v. Clark, Case No. 2:03-cv-490-FTM-33DNF, 2006 WL 289107, at *2 (M.D. Fla. Feb. 7, 2006)). These kinds of notices can be taken without converting the motion to dismiss to a motion for summary judgment. See Universal Express, Inc. v. U.S. S.E.C., 177 Fed. App'x. 52, 53 (11th Cir. 2006) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations as true and view them in a light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation. The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially

plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## DISCUSSION

### A. Judicial Notice

Defendants move this Court to take judicial notice of (a) several court filings in the concurrent state cases and (b) the contractual agreement between Collier HMA and Dr. Brian Menichello. (Docs. 26; 38; 39). Although given the opportunity, Plaintiffs did not respond to Defendants' requests. As to the state cases, Defendants cite four lawsuits in the Twentieth Judicial Circuit Court in Collier County, Florida, and two actions in Florida's Second District Court of Appeal.[3] (Doc. 26 at 1). Defendants do not seek a ruling from this Court that the allegations contained within the court filings are true, but rather, to take notice Collier HMA is in the process of seeking judgments against the PRMG physicians. In doing so, Defendants want to show (1) Plaintiffs have improperly split claims and (2) this Court should abstain from exercising its jurisdiction over this action pursuant to

---

[3] The six cases are: (1) *Collier HMA Physician Management, LLC v. Brian Menichello*, Twentieth Judicial Circuit Court, in and for Collier County, Florida, Case No. 11-2014-CA-002816-001-XX; (2) *Collier HMA Physician Management, LLC v. Monica Menichello*, Twentieth Judicial Circuit Court, in and for Collier County, Florida, Case No. 11-2014-CA-002817-001-XX; (3) *Collier HMA Physician Management, LLC v. Brian Murphy*, Twentieth Judicial Circuit Court, in and for Collier County, Florida, Case No. 11-2015-CA-000029-001-XX; (4) *Collier HMA Physician Management, LLC v. Joseph Stafford*, Twentieth Judicial Circuit Court, in and for Collier County, Florida, Case No. 11-2015-CA-000544-001-XX; (5) *Collier HMA Physician Management, LLC v. Brian Menichello*, Florida's Second District Court of Appeal, Case No. 15-3556; and (6) *Collier HMA Physician Management, LLC v. Brian Menichello*, Florida's Second District Court of Appeal, Case No. 16-1204.

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The Court thus takes judicial notice of the subject matter of the state trial and appellate court filings and recognizes the judicial acts each order represents. The Court, however, does not take judicial notice of the accuracy of the factual allegations, arguments, or legal conclusions contained within the state court filings. *See Vongrabe v. Rice*, No. 3:06-cv-152-J-33HTS, 2006 WL 1805873, at *2 (M.D. Fla. June 29, 2006).

The Court, however, declines to take judicial notice of the employment contract between Collier HMA and Dr. Brian Menichello because Defendants have failed to show it is indisputable. *See Jones*, 29 F.3d at 1553 (citing Fed. R. Evid. 201)). Defendants assert the contract was filed as a document in Florida's Second District Court of Appeal, but there is no evidence to show that is true. In addition, Defendants do not provide any other bases in support of this Court taking judicial notice of the contract. Thus, the agreement is not capable of accurate and ready determination "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is, therefore, inappropriate. To this extent, the Court (a) grants Defendants' Request for Judicial Notice (Doc. 26) and Supplemental Request for Judicial Notice (Doc. 38) and (b) grants in part and denies in part Defendants' second Supplemental Request for Judicial Notice (Doc. 39).

**B. Motion to Dismiss**

Defendants advance several theories in support of their motion to dismiss. First, Defendants argue Plaintiffs have impermissibly split their claims. (Doc. 24 at 6-10). In the alternative, Defendants maintain this Court should abstain from exercising its jurisdiction pursuant to *Colorado River*. (*Id.* at 9-10). Second, Defendants state Plaintiffs

have failed to impute liability to NCH Healthcare and NCH Hospital.  (*Id.* at 11-13).  Third, Defendants move to dismiss Counts I through III because (a) Naples HMA lacks standing and (b) their conduct was justified under the competition privilege.  (*Id.* at 13-18).  Fourth, Defendants argue the intracorporate conspiracy doctrine bars Plaintiffs' conspiracy claim under Count IV.  (*Id.* at 18-19).  Next, Defendants maintain Plaintiffs fail to state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V).  (*Id.* at 19-21).  And, lastly, Defendants contend Plaintiffs have failed to set forth a claim for unfair competition under Count VI.  (*Id.* at 21).  The Court addresses each argument below, starting with whether Plaintiffs have impermissibly split their causes of action.

1. *Claim Splitting/Abstention Doctrine*

Defendants first move to dismiss the Amended Complaint under the claim splitting doctrine.  (*Id.* at 6-10).  Specifically, Defendants argue this case and the concurrent state action involve the same parties or their privies and arise out of the same transaction, and thus this case must be dismissed.  (*Id.*).  Plaintiffs assert, among other things, that the claim splitting doctrine does not apply when the concurrent action is in state court and, even if the rules did apply here, the action survives Defendants' motion.  (Doc. 33 at 5-9).  Based on the following, the Court finds Plaintiffs have not impermissibly split their claims.

Federal courts have long recognized Florida's common law against claim splitting.[4] *See Bowman v. Coddington*, 517 F. App'x 683, 685 (11th Cir. 2013); *Robbins v. Gen.*

---

[4] Plaintiffs argue the federal rules against claim splitting are procedural and thus apply here under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  (Doc. 43 at 3-4).  Nonetheless, courts have recognized that when the concurrent action is pending in Florida state court, Florida claim splitting rules apply.  *See Pollitz v. Hallifax Health* ("The federal doctrine of claim-splitting permits a federal court to stay or dismiss a suit that is duplicated of another

*Motors De Mexico, S. DE R.L. DE CV.*, 816 F. Supp. 2d 1261, 1263-64 (M.D. Fla. 2011);

*Pollitz v. Halifax Health*, Case No. 6:15-cv-450-Orl-37KRS, 2015 WL 4987732, *2 (M.D. Fla. Aug. 19, 2015).  In Florida, the rule against claim splitting requires that "[a]ll damages sustained or accruing to one as a result of a single wrongful act must be claimed or recovered in one action or not at all."  *Mims v. Reid*, 90 So. 2d 498, 501 (Fla. 1957).  This rule "is designed to prevent a multiplicity of suits."  *Bowman*, 517 F. App'x at 685 (quoting *Brody Const., Inc. v. Fabri-Built Structures, Inc.*, 322 So. 2d 61, 63 (Fla. 4th DCA 1975)).

Defendants allege that this Court must dismiss the Amended Complaint because Plaintiffs have impermissibly split their causes of action by originally failing to assert their tortious interference, conspiracy, FDUTPA, and unfair competition claims in the underlying state court action.  (Doc. 24 at 6-10).  To support this claim, Defendants argue that the two suits arise from the same transaction or occurrence.  (*Id.* at 6; 9).  Defendants, however, fail to recognize that the prohibition against splitting a cause of action is a subset of res judicata.  *See Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1211 (Fla. Dist. Ct. App. 2005) (citations omitted).  This means "that if res judicata is not a bar to the bringing of a claim, impermissible splitting of causes of action is not either."  *Id*.  Res judicata means:

> [a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or

---

case then pending in federal court . . . [Therefore,] [t]he federal rule against claim-splitting is not applicable [where] the previously filed action is pending in state, not federal, court.") (internal quotations and citations omitted)); *see also Bowman*, 517 F. App'x at 685 (applying Florida claim splitting rules where concurrent action remained pending in Florida state court).  By contrast, in its most recent claim splitting case, the Eleventh Circuit in *Vanover v. NCO Financial Services, Inc.*, 857 F.3d 833, 836 (11th Cir. 2017) applied the federal rules against claim splitting where both actions remained pending in federal court. Considering the above, the Court applies Florida rules here.

> defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.

*Kimbrell v. Paige*, 448 So.2d 1009, 1012 (Fla. 1984). Here, res judicata clearly does not apply because there was no final judgment on the merits in the underlying state court action. Indeed, the state case remains pending. Thus, Defendants cannot argue this federal court action is barred.

In the alternative, Defendants argue the Court should abstain from exercising subject matter jurisdiction over this case pursuant to *Colorado River*. (Doc. 24 at 10-11). Plaintiffs maintain Defendants fail to show exceptional circumstances that warrant this Court to abstain from exercising its jurisdiction. (Doc. 33 at 9-11). The Court agrees with Plaintiffs.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule," and is warranted only in "exceptional circumstances." *Colorado River Water Conservation Dist.*, 424 U.S. at 813 (quotation marks omitted). To determine whether abstention is warranted, federal courts undertake two inquiries. First, courts determine whether the state and federal proceedings are parallel. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). This means the federal and state actions involve "substantially the same parties and substantially the same issues." *Id*. Second, if parallel, courts weigh six factors:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Id*. (citation omitted). Notably, no one factor is determinative, and the weight given to each factor may vary from case to case. *See id.* at 1331-32. Nonetheless, federal courts

have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817 (citation omitted), and "[t]he doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it[,]" *Id.* at 813.

The threshold issue before the Court is whether the federal and state cases are sufficiently parallel. Defendants assert the cases are parallel because they arise out of the same nucleus of operative facts and involve the same parties or their privies. (Docs. 24 at 6; 40 at 4-5). Plaintiffs respond (a) the parties are not substantially the same because the only common party between the two actions is NCHMD and (b) the issues are not sufficiently parallel because the issues differ in scope or involve different remedies. (Doc. 33 at 9-10).

The Eleventh Circuit has acknowledged that "[t]here is no clear test for deciding whether two cases contain substantially similar parties or issues." *Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012). Nonetheless, from the start, the balance weighs heavily in favor of exercising jurisdiction. See *id.* "Thus, if there is any substantial doubt about whether two cases are parallel the court should not abstain." *Id.* (citation omitted). Moreover, "the decision to invoke Colorado River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

In state court, PRMG filed suit against the PRMG physicians, and NCHMD intervened as a party defendant. (Doc. 26 at 1-2; Doc. 26-7). Now, PRMG and Physicians Regional sue NCH Healthcare, NCH Hospital, and NCHMD. (Doc. 9). Indeed,

the Eleventh Circuit has stated that the absence of identical parties does not preclude the application of *Colorado River*, and that "[s]uch formalistic requirements would fly in the face of the Supreme Court's clear efforts to fashion a flexible and holistic test for applying" the doctrine. *See Ambrosia Coal*, 368 F.3d at 1329-30. Because PRMG and NCHMD are parties to both actions, the Court finds that the two proceedings involve substantially the same parties.

The Court, however, is not convinced that the issues are substantially the same. In the state court action, the underlying issue is whether the physicians breached their employee contracts with PRMG. Resolution of the state breach of contract issue, though, would not resolve all claims before this Court. In particular, while Plaintiffs' tortious interference claims rely, in part, on a contractual relationship, there is nothing to show that a decision in the breach of contract case would preclude these claims. Additionally, Plaintiffs' FDUTPA and unfair competition claims do not exist solely because a breach of contract occurred. Therefore, although there is some overlap of the factual allegations, the Court is not convinced it would have "nothing further to do in resolving any substantive part of the case" if the state breach of contract action was decided. *Id.* Accordingly, the Court finds that the litigation is not sufficiently parallel for it to abstain from exercising its jurisdiction and thus resolves any doubt in favor of exercising subject matter jurisdiction.

Even if the two cases were parallel, the *Colorado River* factors militate against the Court abstaining from exercising jurisdiction over this matter. As to the first factor, Defendants concede there is no real property at issue. (Doc. 40 at 5). Thus, this factor does not weigh in favor of abstention.

As to the second, Defendants argue the federal forum is less convenient because it is about 40 miles from their administrative offices, whereas the parties' medical facilities are located near the state trial court. (*Id.*). This is unpersuasive. Instead, the Court looks primarily at "the physical proximity of the federal forum to the evidence and the witnesses." *Ambrosia Coal*, 368 F.3d at 1332. Here, the pleadings make no mention where the evidence and witnesses primarily reside. In any event, Collier County, Florida (where Defendants' offices are located) is within the province of the Fort Myers Division of the Middle District of Florida. *See* M.D. Loc. R. 1.02(b)(5). (*Id.*). There is no indication or even suggestion that the parties would not be able to deliver their witnesses or evidence before this Court for any possible proceedings. (*Id.*). Thus, the weight of the second factor is against abstention.

The third factor goes to the avoidance of piecemeal litigation. Defendants assert this would likely result because both cases concern the employment agreement. (*Id.* at 5-6). But, "Colorado River's factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Id.* at 1333. In *Colorado River*, the federal government filed suit against "some 1,000 water users," seeking a declaration as to its rights in water sources. *Colorado River*, 424 U.S. at 805. In that case, the Supreme Court found abstention appropriate because the federal law in that suit had a clear policy against piecemeal adjudication of water rights. *Id.* at 819. Additionally, that case involved claims against 1,000 users. *Id.* at 805. The Court is not convinced that this case raises the same concerns the Supreme Court had in *Colorado River*. "Although the dual proceedings in this instance will likely result in some

unremarkable repetition of efforts and possibly some piece-by-piece decision-making, there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority of federal cases with state counterparts . . . [in fact,] federal courts are almost invariably obligated to exercise otherwise valid jurisdiction over such cases." *Ambrosia Coal and Const. Co.*, 368 F.3d at 1333. Accordingly, this factor weighs against abstention.

Under the fourth factor, the Court looks at "the order in which the parties obtained jurisdiction." *Id.* When analyzing whether this factor weighs in favor of abstention, courts may consider "how much progress has been made" in each case. *Id.* at 1333 *(citing Moses H. Cone Memorial Hosp.*, 460 U.S. at 21). There is no doubt that more progress has been made in the underlying state court case. In this action, the parties are merely in the pleadings stage. In contrast, the state case has remained ongoing for nearly four years and is now on remand from appeal. Consequently, this factor weighs in favor of abstention.

Next, "[t]he fifth factor considers whether state or federal law applies." *Ambrosia Coal and Const. Co.*, 368 F.3d at 1333. In this action, Plaintiffs have brought all state law claims. This factor, therefore, weighs in favor of abstention. "How much weight it carries, however, is questionable." *Noonan South Inc. v. Volusia County*, 841 F.2d 380, 382 (11th Cir. 1988). Notably, "all federal actions based on diversity jurisdiction are governed by state substantive law." *Id.* The Court thus must consider whether "this action involves complex questions of state law that a state court might be best suited to resolve." *Id.* Defendants assert the issues in this case are complex based upon the extensive case record in the underlying state court actions. (*Id.* at 6). But this alone does not suggest

that the state court is best suited to resolve the issues here. Plaintiffs bring claims in tort and one statutory claim under FDUTPA. The Court is not persuaded that such claims are too complex for this federal forum and thus does not give much weight to this factor.

Finally, Defendants assert that the state court is "fully competent to resolve all of Plaintiffs' claims in this case." (*Id.* at 6). But, "[t]his factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Ambrosia Coal and Const. Co.*, 368 F.3d at 1334 (citation omitted). Defendants do not make this assertion. While it is true that the state court can adequately protect the parties' rights, there is no indication that this Court is unable to do the same. This factor is, therefore, neutral.

In light of the above, the factors do not weigh strongly in favor of abstention. Therefore, this is not an exceptional case that warrants the Court to abstain from exercising its subject matter jurisdiction here. Defendants' motion is thus denied as to this ground.

### 2. Failure to Impute Liability to NCH Healthcare and NCH Hospital

Even if the Court permits this action to proceed, Defendants assert Plaintiffs' claims against NCH Healthcare and NCH Hospital are due to be dismissed. (Doc. 24 at 11-13). Specifically, Defendants argue (1) the Amended Complaint only alleges misconduct by NCHMD and (2) NCH Healthcare and NCH Hospital, as separate and distinct legal entities, are not liable for NCHMD's torts. (*Id.*). Plaintiffs maintain this argument fails because the Amended Complaint alleges each Defendant engaged in direct wrongdoing and thus the rules for corporate veil-piercing do not apply. (Doc. 33 at 11-12). The Court agrees with Plaintiffs.

It is the general rule, as Defendants assert, that parent corporations and their subsidiaries are separate and distinct legal entities and, therefore, a parent is not liable for a subsidiary's torts.  *See American Intern. Group, Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004).  It is also true that "[a] party seeking to pierce the corporate veil and hold a parent corporation liable for the actions of its subsidiary must show both that the parent corporation used the subsidiary as a mere instrumentality and that this was done for an improper purpose."  *Cooper v. Paul Revere Life Ins. Co.*, No. 8:09-CV-1870-T-27TBM, 2010 WL 11507084, at *2 (M.D. Fla. Aug. 12, 2010) (citing Dania Jai–Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1121 (Fla. 1984); Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1320 (11th Cir. 1998) (internal quotation marks omitted)).  In essence, Defendants assert NCH Hospital and NCH Healthcare can only be liable if NCHMD's corporate veil was pierced. (Doc. 24 at 11-13).  But this argument lacks merit.  *See Longleaf Mitigation Dev. Co., LLC v. Fla. Mitigation Providers, LLC*, 519 F. Supp. 2d 1233, 1236 (M.D. Fla. 2007) (citing *Special Purpose Accounts Receivable Coop. v. Prime One Capital Co., L.L.C.*, 125 F. Supp. 2d 1093, 1104-05 (S.D. Fla. 2000) (holding a business organization can be "liable if it engaged in direct wrongdoing").  Here, Plaintiffs state they do not seek to pierce the corporate veil but, rather, want to recover under a theory that each Defendant engaged in direct wrongdoing and are liable as a direct participant in the improper conduct.  (Doc. 33 at 11-12).  A review of the Amended Complaint shows Plaintiffs allege all Defendants committed wrongdoing.  Because the Court is not persuaded that Plaintiffs seek to hold NCH Healthcare and NCH Hospital liable on a veil-piercing theory, the Amended Complaint survives the motion to dismiss stage.

### 3. Counts I through III: Tortious Interference

Under Counts I through III, Plaintiffs bring claims for tortious interference with contractual and/or advantageous business relationships against each Defendant. (Doc. 9 at 14-17). Although it is true that "a claim of tortious interference with a contract and a claim of tortious interference with a business relationship are one in the same[,]" the former requires a contract whereas the latter requires a business relationship. *Pilkington v. United Airlines*, 921 F. Supp. 740, 749 (M.D. Fla. 1996). Therefore, the two claims are similar but include different elements. Defendants contest Counts I through III on two fronts. First, Defendants argue Naples HMA cannot set forth a claim for tortious interference with a contractual relationship because it is not a party to the underlying contracts. (Doc. 24 at 13). Second, Defendants claim Plaintiffs cannot set forth any tortious interference claim because their interference was justified under the competition privilege. (*Id.* at 13-18). The Court addresses each argument in turn.

Four elements are required to set forth a claim of tortious interference with a contractual or business relationship: "(1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference." *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla 1st DCA 2015) (citing Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985); McKinney–Green, Inc. v. Davis, 606 So.2d 393, 397–98 (Fla. 1st DCA 1992)).

The first issue before the Court is whether Naples HMA can set forth a claim for tortious interference with a contractual relationship if it is not a party to the underlying

physician contracts. The answer is no. In Florida, in order to state a claim of tortious interference with a contractual relationship, a plaintiff must allege "the existence of a . . . contract *to which a plaintiff is a party*[.]" *Johnson v. Wellborn*, 418 F. App'x 809, 815-16 (11th Cir. 2011) (quoting *Fernandez v. Haber & Ganguzza, LLP*, 30 So. 3d 644, 646 (Fla. 3d DCA 2010) (emphasis added)). Here, Plaintiffs admit the contracts at issue existed solely between Collier HMA (PRMG) and each PRMG physician. (Doc. 9 at ¶ 23). While Plaintiffs allege Naples HMA enjoyed some rights under the contracts, they still fail to show how Naples HMA, as a non-party, can sue under the contracts if no contractual relationship existed. Even drawing all reasonable inferences in favor of Naples HMA, the Court finds it has failed to state a plausible claim for tortious interference with a contractual relationship.

Thus, remaining before the Court is whether (a) Naples HMA has stated a claim for tortious interference with a business relationship and (b) Collier HMA has set forth a claim for tortious interference with a contract and/or business relationship. Plaintiffs allege they had an established, advantageous business relationship with the PRMG physicians (Collier HMA has alleged it has a contractual relationship with the physicians); Defendants knew of these relationships; Defendants intentionally and unjustifiably interfered with these relationships; and Plaintiffs suffered damages as a result. With this prima facie showing, the burden shifts to Defendants to justify their interference under the competition privilege. *See Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980). Here, Defendants argue their interference was justified under the competition privilege because the contracts at issue were terminable at will. (Doc. 24 at 13-18). The Court disagrees.

"Although the general rule is that an action will lie where a party tortiously interferes with a contract terminable at will, it is only direct and unjustified interference that is actionable." *Perez v. Rivero*, 534 So. 2d 914, 916 (Fla. 3d DCA 1988) (citing *Unistar Corp. v. Child*, 415 So. 2d 733 (Fla. 3d DCA 1982); *Ethyl Corp. v. Balter*, 386 So. 2d 1220 (Fla. 3d DCA 1980)). "If the defendant can prove that the interference was lawful competition—a privilege which the courts recognize when a contract is terminable at will—the defendant will not be found to have committed the tort of wrongful business interference." *Id.* (citing *Unistar*, 415 So. 2d at 735; comparing *Ins. Field Servs., Inc. v. White & White Inspection and Audit Servs., Inc.*, 384 So. 2d 303 (Fla. 5th DCA 1980)). "Indeed . . . the defendant's interference to protect its economic interests is privileged unless the plaintiff alleges "a purely malicious motive" divorced from any "legitimate competitive economic interest.'" *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (citing Heavener, Ogier Servs., Inc. v. R.W. Fla. Region, Inc., 418 So. 2d 1074, 1076–77 (Fla. 5th DCA 1982)).

Nonetheless, even where "there is a qualified privilege to interfere . . . the privilege carries with it the obligation to employ means that are not improper." *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987) (citing *Peacock v. GMAC*, 432 So. 2d 142, 144-145 (Fla. 1st DCA 1983); *Babson Bros. Co. v. Allison*, 337 So. 2d 848, 850 (Fla. 1st DCA 1976)). Thus, "even where the defendant's motive is not purely malicious, a tortious interference claim may succeed if improper methods were used." *KMS Restaurant Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) (citations omitted). "Improper means which will defeat the competition privilege include physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct and threats of

illegal conduct." *Bluesky Greenland Envtl. Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013) (citing *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526 (11th Cir. 1985); *Morsani v. Major League Baseball*, 663 So. 2d 653 (Fla. 2d DCA 1995); Fla. Std. Jury Instructions in Civil Cases § 408.6 (2010) (internal quotation marks omitted)). Additionally, "the privilege does not encompass the purposeful cause of a breach of contract." *McCurdy*, 508 So. 2d at 384 (citing *Yoder v. Shell Oil Co.*, 405 So. 2d 743, 744 (Fla. 2d DCA 1981); Restatement (2d) of Torts, s. 767 (1977)).

Even if Defendants' interference was lawful competition, Plaintiffs' tortious interference claims survive because Defendants engaged in improper conduct. Here, Plaintiffs assert Defendants engaged in conspiratorial conduct by agreeing to misadvise the PRMG physicians that their employment agreements were legally unenforceable, which would leave them free to sign contracts with the NCH Defendants. (Doc. 9 at ¶ 35). Plaintiffs state this "deceptive, misinformation become part of the NCH Defendants' recruitment pitch to the PRMG physicians to breach their employment agreements[.]" (*Id.*). Thus, Plaintiffs have alleged Defendants employed improper means, such as misrepresentations, conspiratorial conduct, and purposeful breach of contract in order to procure the employment of the PMRG physicians. Defendants, therefore, have failed show their interference was qualified under the competition privilege. Accordingly, Counts I through III survive to the extent discussed above.[5]

_____

[5] It is important to note Naples HMA still cannot set forth a for claim tortious interference with a contract. However, its tortious interference claim with a business relationship remains.

### *4. Count IV – Civil Conspiracy*

Under Count IV, Plaintiffs bring a claim for civil conspiracy based on an underlying claim of tortious interference with contractual and/or advantageous business relationships. (*Id.* at 17-18). Defendants argue dismissal of Count IV is appropriate because the intracorporate conspiracy doctrine bars interrelated entities from being capable of conspiring together.[6] (Doc. 24 at 18-19). Plaintiffs argue this doctrine is limited in scope and thus does not apply to separate, although related, entities. (Doc. 33 at 15-18). For the reasons that follow, the Court finds Count IV survives Defendants' motion.

In Florida, "[a]n action for conspiracy . . . requires that there has been a combination of two or more persons (or entities) seeking to accomplish an unlawful act or to accomplish a lawful act by unlawful means. [And] [t]he actors must have a common purpose." *Buckner v. Lower Keys Hosp. Dist.*, 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981) (citation omitted). Here, Plaintiffs allege Defendants agreed to interfere in the contractual and/or advantageous business relationships of Physicians Regional and the PRMG physicians, with the common purpose of procuring the employment of the PRMG physicians in violation of their contracts. (Doc. 9 at ¶¶ 63-68). Defendants argue, however, Plaintiffs fail to allege "a combination of two or more entities" because Defendants constitute a "single entity" under the intracorporate conspiracy doctrine and thus cannot state a claim for conspiracy. (Doc. 24 at 18-19). Under this doctrine, where a decision is made by a "single entity" and not a "combination of separate economic groups or forces[,]" a claim for civil conspiracy must fail. *Id.*

---

[6] Defendants also argue the competition privilege bars Plaintiffs' conspiracy claim. (Doc. 24 at 3). This argument, however, fails for the same reasons the Court found above.

Turning to this case, the issue before the Court is whether NCH Healthcare, NCH Hospital, and NCHMD constitute a "single entity" or a "combination of separate economic groups or forces." *Id.* As an initial matter, it is important to note that Defendants make inconsistent arguments. First, in support of dismissing NCH Healthcare and NCH Hospital, Defendants state they constitute "separate and distinct legal entities[.]" (*Id.* at 11-12). Now, in moving to dismiss Count IV, Defendants assert they are "interrelated entities" incapable of conspiring together. (*Id.* at 18-19). Defendants' contradictory statements do not persuade the Court. Although Defendants are affiliated and share the same officers and directors, Plaintiffs allege facts that show Defendants are separate and distinct legal entities with independent functions. (Doc. 9 at ¶¶ 7-9). From these allegations, it appears Defendants are related companies not necessarily part of a single entity. Therefore, in drawing all reasonable inferences in favor of Plaintiffs, the Court finds Plaintiffs have stated a claim for conspiracy.[7]

### 5. *Count V – FDUTPA*

Under Count V, Plaintiffs bring a statutory claim under FDUTPA. (*Id.* at 18-20). To state a claim under FDUTPA, a party must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (citation omitted). The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat.

---

[7] Again, the Court notes Naples HMA cannot set forth a claim for conspiracy based upon a tortious interference claim with a contractual relationship.

§ 501.202(2). In this case, Plaintiffs allege that Defendants engaged in deceptive and unfair conduct by, among other things, engaging in discussions with PRMG physicians, misrepresenting the enforceability of their employee agreements, and inducing them to breach their contracts. (*Id.* at ¶ 77).

Defendants challenge Plaintiffs' FDUTPA claim on four fronts. First, Defendants maintain Plaintiffs, as non-consumers, lack standing under the Act. (Doc. 24 at 19-20). Second, Defendants assert their conduct was justified under the competition privilege. (*Id.* at 20). Third, Defendants argue Plaintiffs cannot recover prospective profits as alleged. (*Id.* at 20-21). And, last, Defendants contend that the FDUTPA claim fails due to Plaintiffs' failure to allege deceptive or unfair conduct that is likely to cause consumer injury. (Doc. 40 at 9). While the Court is not convinced by Defendants' first three arguments, their final contention—that Plaintiffs fail to allege a plausible claim of deceptive conduct likely to cause consumer harm—carries the day. (*Id.*).

Prior to 2001, Fla. Stat. § 501.211(2) limited the class of plaintiffs who could file suit for money damages to "consumers who have suffered a loss as a result of a violation of [the Act]." *Bailey v. St. Louis*, 196 So. 3d 375, 382 (Fla. 2d DCA 2016). In 2001, however, the Florida legislature amended the Act to replace the word "consumer" with the term "person." *Id.*; *see also* Fla. Stat. § 501.211(2). The Florida Supreme Court has not yet addressed the effect of the 2001 amendment, but at least three of Florida's District Courts of Appeal have considered the issue. Each court has concluded that, in amending the Act, the legislature intended to give non-consumers standing. *See, e.g.*, *Bailey*, 196 So. 3d at 383 (finding a non-consumer has standing to sue for damages under

FDUTPA); *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n. 2 (Fla. 3d DCA 2016) (same); *Caribbean Cruise Line, Inc.*, 169 So. 3d at 169 (same).

That an entity other than a consumer can bring a FDUTPA claim does not mean, however, that '[h]arm to consumers is not required." *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (internal quotation marks omitted)). "To the contrary <u>Caribbean Cruise Line</u> unequivocally instructs that a plaintiff must prove that <u>there was injury or detriment to consumers</u> in order to satisfy all the elements of a FDUTPA claim." *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (quoting *Caribbean Cruise Line, Inc.*, 169 So. 3d at 169) (emphasis in original) (internal quotation marks omitted)).

In *Caribbean Cruise Line*, the court explained that the Florida Supreme Court defines the term "unfair practice" as used in FDUTPA as an act "that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Caribbean Cruise Line, Inc.*, 169 So. 3d at 169 (quoting *PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). Similarly, the Florida Supreme Court defines the word "deception" as a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* Thus, to state a claim under FDUTPA, *Caribbean Cruise Line* instructs the Court that Plaintiffs must allege facts plausibly suggesting that Defendants actions were likely to cause consumer harm.

Plaintiffs contend that they have, in fact, alleged harm to consumers. (Doc. 43 at 7). Specifically, Plaintiffs cite to their allegation detailing the contracts NCHMD required

Dr. Brian Menichello to sign as a new hire.  (Docs. 43 at 7; 9 at ¶ 40).  In particular, the contract (1) required any patient referrals to be made to NCH physicians and affiliates; (2) prohibited solicitation of patients; and (3) required the transition of patients to other NCHMD physicians if Dr. Menichello's employment ended with NCHMD.  (Doc. 9 at ¶ 40).  Notably, the allegations to which Plaintiffs cite relate predominantly to the similarity between PRMG's employment contracts and the contracts NCHMD requires new physicians to sign.  (*Id*.).  In short, Plaintiffs fail to suggest how this contract would support its FDUTPA claim.  At best, Plaintiffs allege that patients who followed Dr. Menichello would be required to transition to other NCHMD physicians should he leave NCHMD's employ.  Although Plaintiffs argue that harm to consumers (patients) may occur, it does not allege any facts supporting a plausible inference that any patients have or are likely to have suffered damages.  Thus, even assuming Plaintiffs' factual allegations are true, they have failed to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).  Consequently, the Court finds Count V is due to be dismissed.

### 6. *Count VI – Unfair Competition*

Under Count VI, Plaintiffs bring a common law claim for unfair competition based upon tortious interference with a contractual and/or advantageous business relationship.  (Doc. 9 at 20).  Defendants argue Count VI should be dismissed for two reasons.  First, Defendants state Plaintiffs fail to allege any "likelihood of consumer confusion."  (Doc. 24 at 21).  And, second, Defendants assert the competition privilege bars Plaintiffs' claim of unfair competition.  (*Id*.).  Plaintiffs maintain (1) it need not allege any "likelihood of consumer confusion" for an unfair competition claim based on tortious interference and

(2) the competition privilege does not apply. (Doc. 33 at 19-20; n. 9). The Court agrees with Plaintiffs.

First, the Court finds, unlike what Defendants assert, Plaintiffs have stated a prima facie claim for unfair competition. Under Florida law, unfair competition is an "umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Ameritox, Ltd. V. Millennium Labs, Inc.*, No. 8:11–cv–775–T–24–TBM, 2012 WL 33155, at *4 (M.D. Fla. Jan. 6, 2012). "[T]here is no single set of elements that apply uniformly to all claims of unfair competition ... [and] courts have applied elements from other established claims to unfair competition claims, where appropriate, on a case-by-case basis." *Id.* (citations omitted); *see also Mfg. Research Corp.*, 693 F.2d at 1037, 1040 (11th Cir. 1982) (applying the elements of a claim for tortious interference to a claim for unfair competition based on tortious interference).

Turning to the Amended Complaint, Plaintiffs allege Defendants engaged in conduct "contrary to honest practice in commercial matters," which included "tortious interference with the contractual and/or advantageous business relationships of Physicians Regional[.]"[8] (Doc. 9 at ¶ 81). Because Plaintiffs base their common law unfair competition claim on a theory of tortious interference, the Court evaluates this claim through the lens of Florida law on tortious interference claims. Based upon the Court's conclusion above that Plaintiffs have stated a plausible claim for tortious interference

---

[8] Plaintiffs also appear to base their unfair competition claim on "deceptive and unfair practices" under FDUTPA. (Doc. 9 at ¶ 81). Because Plaintiffs have failed to state a claim under FDUTPA, the Court finds they have likewise failed to set forth a claim for unfair competition based upon the Act. However, Plaintiffs unfair competition claim based upon tortious interference survives.

(except for Naples HMA's claim based on a contractual relationship) their unfair competition claim is likewise sufficiently pled. Moreover, to the extent Defendants contend the competition privilege is fatal to Plaintiffs' unfair competition claim, the Court finds this argument fails for the same reasons discussed above. Count VI therefore survives the motion to dismiss.

Accordingly, it is now

**ORDERED:**

1. Defendants NCH Healthcare System, Inc., Naples Community Hospital, Inc., and NCHMD, Inc.'s Request for Judicial Notice (Doc. 26) and Supplemental Request for Judicial Notice (Doc. 38) are **GRANTED.**

2. Defendants NCH Healthcare System, Inc., Naples Community Hospital, Inc., and NCHMD, Inc.'s second Supplemental Request for Judicial Notice (Doc. 39) is **GRANTED in part** and **DENIED in part** to the extent stated above.

3. Defendants NCH Healthcare System, Inc., Naples Community Hospital, Inc., and NCHMD, Inc.'s Motion to Dismiss (Doc. 24) is **GRANTED in part** and **DENIED in part**.

   a. Defendants' Motion to Dismiss (*Id.*) is **GRANTED** as to Count V.

   b. To the extent Naples HMA has failed to state a claim for tortious interference with a contract, Counts I through IV and VI are **DISMISSED** as to that plaintiff and claim only.

   c. All other Counts survive at this motion to dismiss stage.

4. Defendants shall file an answer to the Amended Complaint (Doc. 9) on or before **February 5, 2019**.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of January, 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record