UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:18-cv-408-SPC-MRM

COLLIER HMA PHYSICIAN
MANAGEMENT, LLC, *et al.*,

     Plaintiffs,

v.

NCH HEALTHCARE SYSTEM, INC., *et al.*,

     Defendants.

_____/

## PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' EXPERT EVAN STARR, PH.D.

Plaintiffs Collier HMA Physician Management, LLC, d/b/a Physicians Regional Medical Group ("PRMG"), and Naples HMA, LLC, d/b/a Physicians Regional Medical Center-Pine Ridge and Physicians Regional Medical Center-Collier Boulevard ("PRMC Hospital") (collectively, "Plaintiffs"), hereby move to exclude the opinions of Defendants'[1] expert Evan Starr, Ph.D. ("Dr. Starr"), pursuant to Rules 702 and 403 of the Federal Rules of Evidence and the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

---

[1] "Defendants" are NCH Healthcare System, Inc., Naples Community Hospital, Inc. and NCHMD, Inc. and shall be referred to collectively as either "Defendants" or "NCH."



MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

LASHGOLDBERG.COM

## PRELIMINARY STATEMENT

NCH has proffered Dr. Starr to opine on the purported negative effects that restrictive covenants have on physicians, generally, as well as the physicians at issue in this case, and the negative effects the at-issue restrictive covenants would have on the public if enforced.  Those opinions are improper and should be excluded for at least five reasons.

*First*, this case is not about the enforceability of the restrictive covenants or the public policy implications related to such enforcement; rather, it is about Defendants' tortious conduct in recruiting and hiring physicians with full knowledge that those physicians' employment agreements with PRMG prohibited them from working for Defendants for the 12-month period following termination or expiration of the agreement.  Defendants have consistently attempted to reframe the issues in this case to focus upon the *underlying enforceability* of these restrictive covenants. As explained below (and in Plaintiffs' contemporaneously filed motion for partial summary judgment), any alleged unenforceability of the restrictive covenants is not a valid defense to a tortious interference claim and is of no legal relevance to Plaintiffs' claims.  It necessarily follows that Dr. Starr's opinions are similarly irrelevant to any material issue in this case and should therefore be excluded.

*Second*, even if Dr. Starr's opinions were relevant, those opinions threaten to invade the Court's role in interpreting the law, and the jury's role in making factual

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

findings based on the applicable law. Dr. Starr attempts to do both. His report contains lengthy exposition on Florida law, on the Florida statutory framework for restrictive covenants, and on his interpretation of provisions in PRMG's employment agreements with its physicians. Decades of precedent in this Circuit deems these opinions inappropriate.

*Third*, Dr. Starr's opinions are unhelpful and confusing because he engages in rank speculation, and merely parrots the testimony provided by lay witnesses in rendering his opinions.

*Fourth*, Dr. Starr's methodology is unreliable because he did not conduct any empirical analyses to reach his conclusions, relying instead on biased anecdotes and record evidence, which a lay jury is capable of independently assessing without his assistance.

Lastly, even if they could pass muster under Rule 702 and *Daubert*, his opinions should be excluded under Rule 403 because any attenuated probative value they may have is grossly outweighed by the unfair prejudice and confusion presenting them to a jury would cause.

## **BACKGROUND**

Plaintiffs and Defendants are competing healthcare systems in Southwest Florida. *See* Am. Compl. ¶¶ 19, 30 (Doc. 9). PRMG employs physicians, including primary care physicians, and had previously employed Drs. Bryan Murphey, Joseph

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Stafford, Brian Menichello, Monica Menichello, Natasha Choyah, Paul Rubinton, and Carlos Portu (collectively, the "Physicians"). *Id.* ¶ 28.  The Physicians entered into employment agreements with PRMG and Non-Party Collier Blvd. HMA Physician Management, LLC (the "Employment Agreements"). *Id.* ¶¶ 23-24.

Each of the Physicians' Employment Agreements contained a restrictive covenant that states as follows:

> During the term of this Agreement, and for the 12-month period after this Agreement expires or is terminated, you won't have any financial relationship, including, without limitation, as an employee or independent contractor, with Naples Community Hospital, Inc., Lee Memorial Health System, or Millennium Physician Group, nor any organization that directly or indirectly controls, is controlled by or is under common control with, Naples Community Hospital, Inc., Lee Memorial Health System or Millennium Physician Group.

*Id.* ¶ 24 (the "PRMC Noncompete").  Despite their knowledge of the terms of the PRMC Noncompete, Defendants made the conscious decision to hire the Physicians away from Plaintiffs. *Id.* ¶¶ 34, 40.  Plaintiffs thereafter commenced this action against Defendants, alleging that they tortiously interfered with Plaintiffs' business and contractual relationships with the Physicians. *See id.* ¶ 28.

On June 1, 2020, Defendants served Dr. Starr's report, which he has since amended on July 23, 2020, and again on July 30, 2021.[2]  The centerpiece of Dr. Starr's opinion is that the PRMC Noncompete is purportedly "detrimental to the

---

[2] Dr. Starr's operative expert report is referred to as the "Starr Report" or "Starr Rep." and is attached as Exhibit 1.



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

public health, safety and welfare" and that these alleged public policy concerns "outweigh any potential business interest." Ex. 1, Starr Rep. at 3-4. In reaching that conclusion, Dr. Starr opines that enforcement of the PRMC Noncompete would lead to the following negative outcomes: (1) severed physician-patient relationships; (2) reduced patient access to health care; (3) decreased quality of health care; and (4) increased health care prices. *Id. passim.* Dr. Starr's Report also discusses the purported "economic rationales" for the PRMC Noncompete and his view of the legitimacy of those rationales and includes a lengthy recitation of various statutes, case law, and scholarly commentary. Dr. Starr was deposed twice in this case, once on July 27, 2020, and again on October 8, 2021.[3]

## **LEGAL STANDARD**

Rule 702 compels courts to act as "gatekeepers" over the admissibility of expert scientific and technical evidence to make certain that unreliable testimony does not reach the jury. *See Daubert,* 509 U.S. at 597. This gatekeeping function "'inherently require[s] the trial court to conduct an exacting analysis' of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (en

---

[3] Citation to the deposition conducted in 2020 is referred to as "Starr 2020 Tr. [page:line]" and the 2021 deposition as "Starr 2021 Tr. [page:line]." The 2020 and 2021 deposition transcripts are attached as Exhibits 2 and 3, respectively.


LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

banc).   Accordingly, courts in this Circuit are required to engage in a *"rigorous three-part inquiry"* assessing whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.,* 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting *Frazier,* 387 F.3d at 1260) (emphasis added). "The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Id.*

## ARGUMENT

### I.    Dr. Starr's Opinions Will Not Assist the Trier of Fact

Dr. Starr's opinions will not assist the trier of fact for at least four reasons: (1) they are irrelevant to deciding any material issue of fact; (2) they traffic in legal conclusions and improper argumentation, and thus invade the exclusive province of the Court; (3) they are based on rank speculation; and (4) they simply parrot the testimony of lay witnesses.

### A.    Dr. Starr's Opinions about the PRMC Noncompete Have No Bearing on the Issues in this Case.

Dr. Starr opines that the PRMC Noncompete is allegedly "detrimental to the public health, safety and welfare" and that the "public policy effects of [the PRMC

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Noncompete] outweigh any potential business interest." Ex. 1, Starr Rep. at 3-4. Defendants apparently offer this opinion because Florida law instructs that a court shall not enforce a restrictive covenant unless it is supported by a "legitimate business interest" and that courts can refuse enforcement of a restrictive covenant if "specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint."   Fla. Stat. § 542.335.

As explained in Plaintiffs' motion for partial summary judgment, however, the enforceability of the PRMC Noncompete has no bearing on the issues to be decided by the Court or a jury in *this* case.  As the Florida Supreme Court has made clear, "the unenforceable nature of the alleged contract . . . does not bar a suit for intentional interference with a contract."  *United Yacht Brokers, Inc. v. Gillespie,* 377 So. 2d 668, 672 (Fla. 1979).[4]   In so holding, the Court articulated "[t]he agreement need not [] be enforceable by the plaintiff as a contract" because "[t]he law of course does not object to the voluntary performance of agreements merely because it will not enforce them and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes."   *Id.* Consistent with the directives of the Florida Supreme Court, the Eleventh Circuit

_____

[4] The Florida Supreme Court also has made clear that a claim for tortious interference with a business relationship also need not be "evidenced by an enforceable contract."  *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

and federal courts in this District have likewise held that "a plaintiff can maintain a cause of action against a third party for tortious interference in a contract even though he might not be able to enforce the underlying contract." *Grupo Televisa, S.A. v. Telemundo Commc'ns. Grp., Inc.*, 485 F.3d 1233, 1243 (11th Cir. 2007); *see also Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1344 (M.D. Fla. 2006) ("a claim for tortious interference can lie even if the contract forming the basis of the relationship is void and unenforceable.").

Given this authority, it is irrelevant whether the PRMC Noncompete is "detrimental to the public health, safety, and welfare." Ex. 1, Starr Rep. at 4. It is similarly irrelevant whether the public policy effects of the PRMC Noncompete outweigh any potential business interests. *Id.* at 3. At bottom, whether the PRMC Noncompete is enforceable has *no bearing* on the viability of Plaintiffs' claims for tortious interference with either a business or contractual relationship. Dr. Starr's opinions on this topic would serve only to confuse the issues and misdirect the jury's attention to irrelevant matters that have no application to the questions at hand.

The Supreme Court has made clear that the helpfulness prong of Rule 702 "goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Thus, it is well settled that expert opinions that do not "logically advance[] a material aspect of the case" are unhelpful to the trier of fact and therefore do not pass muster under

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

*Daubert.   McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004).[5]  As the

Eleventh Circuit explained in *Allison v. McGhan Med. Corp.*, in acting as a

gatekeeper, the court is responsible for "keep[ing] unreliable and irrelevant

information from the jury," because of its "inability to assist in factual

determinations, its potential to create confusion, and its lack of probative value."

184 F.3d 1300, 1311–12 (11th Cir. 1999).   Accordingly, Dr. Starr's opinions—

which bear only on the irrelevant issue of whether the Court should deem the PRMC

Noncompete unenforceable—are unhelpful and should be excluded in their entirety

under *Daubert*.

### B.      Even if Dr. Starr's Opinions Were Relevant, They Amount to Nothing More Than Legal Conclusions.

It is well settled that "[a]n expert witness may not testify as to the state of the

law [because] this is the Court's duty."  *Pleasant Valley Biofuels, LLC v. Sanchez-*

*Medina*, 2014 WL 2855062, at *5 (S.D. Fla. Jun. 23, 2014) (citing *Montgomery v.*

*Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).   As the Eleventh

Circuit has stated, "'the court must be the jury's only source of law,' and questions

of law are not subject to expert testimony."  *Commodores Entm't Corp. v. McClary*,

879 F.3d 1114, 1128-29 (11th Cir. 2018); *see also Cook ex rel. Est. of Tessier v.*

---

[5] *See also Fabelo v. Wells Fargo Bank, N.A.*, 2014 WL 12596986, at *7 (S.D. Fla. Nov. 19, 2014) (finding expert's opinion on negligence irrelevant "because Plaintiffs' claim for conversion does not require a finding of negligence"); *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2019 WL 2012966, at *9 (S.D. Fla. Mar. 11, 2019) (excluding expert opinions that were irrelevant to the plaintiff's breach of contract claim and insurance coverage issue).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

*Sheriff of Monroe Cty., Fla*., 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("[C]ourts must remain vigilant against the admission of legal conclusions").

Moreover, "[a] non-lawyer expert [] cannot testify about the meaning of a statute . . . [,]" nor may an expert "testify that statutes or laws were violated as a matter of law, about the meaning of legal terms, or the legal effect of the statutes or laws." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 765019, at *40 (N.D. Fla. Feb. 28, 2021) (internal quotation marks, alterations, and citations omitted). Nor may an expert "use terms that have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* (internal citations and quotations omitted). "Expert testimony amounts to a legal conclusion if it either tracks the language of the applicable statute or uses a term that has a specialized legal meaning that is more precise than the lay understanding of the term." *Mamani v. Sanchez Berzain*, 2018 WL 1090546, at *6 (S.D. Fla. Feb. 28, 2018) (internal citations and quotation marks omitted) (excluding expert for "not only offer[ing] an opinion on the legal standard itself, [but] then appl[ying] that standard and conclud[ing] that it has been met in these cases.").

Dr. Starr's opinions run well afoul of this precedent. His report is replete with examples of him defining and expounding on statutory terms, tracking statutory language, examining judicial precedent, and applying his understanding of Florida law to the facts of this case. This is impermissible. Dr. Starr makes no secret of

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

this: in his "materials considered" section, he states that he relied on "Florida Statutes and related Case Law" in rendering his opinions.  Ex. 1, Starr Rep. at 6.  Dr. Starr then provides lengthy exposition on the state of the law of noncompetes, both in Florida and other jurisdictions.  *Id.* at 12-19.  This includes extensive discussion of what does and does not constitute a "legitimate business interest" within the meaning of Fla. Stat. § 542.335, what legitimate business interests are protectable, and the circumstances in which noncompetes are unenforceable even if they protect a legitimate business interest.  *Id.* at 12-14.

Later in his report, Dr. Starr "examine[s] the implications of this body of scholarship [regarding noncompetes] *alongside Florida law* and the particulars of this case."  *Id.* at 31 (emphasis added).  And while Dr. Starr issues a disclaimer that he is not purporting to "interpret Florida law as to what is and what is not a legitimate business interest . . ." (*id.*), he spends the next four pages of his report doing precisely that.[6]  *Id.* at 31 – 35; *id.* at 31 (discussing "[t]he most apparent legitimate interest" as the one "specifically delineated in Florida Statutes § 542.335(1)(b)(3) . . . ."); *id.* at 32 (claiming that the language of the PRMC Noncompete "substantially undercuts any argument that the noncompete is necessary to protect [PRMC's] [business]

---

[6] During his first deposition, Dr. Starr attempted to disavow the fact that he was offering improper legal opinions.  Instead, he claimed that his intent was to "describe[e] . . . how the Florida statutes reportedly handle noncompetes," highlighting "parts of the law that are relevant to the public policy considerations," and "bringing to the attention here that there is a precedent in Florida and elsewhere that [in other professions] noncompetes are unenforceable."  Ex. 2, Starr. 2020 Tr. 115:15-17, 115:22-25, 121:6-10.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

interest in the physician-patient relationship.").  On page 33 of his report, Dr. Starr analyzes the deposition testimony of PRMG's CEO, Scott Lowe, and concludes that his testimony "leads to another key question in this case: *Should the court allow firms to use noncompetes for primary care physicians as a means to control where physicians make referrals . . . ." Id.* at 33 (emphasis added).  Dr. Starr then proceeds to analyze Fla. Stat. § 542.18 and *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774 (Fla. 2017), to determine "whether there are 'special facts beyond ordinary competition' that might justify limiting the mobility options for primary care physicians." *Id.* at 35 (quoting *White*).

At his deposition, Dr. Starr testified extensively about his views regarding "legitimate business interests"—a term of statutory and jurisprudential significance in the noncompete context—and the state of Florida law generally regarding noncompetes.  *See generally* Ex. 3, Starr 2021 Tr. at 13:10-13 ("A. . . . Restraints of trade are illegal [in Florida], and then there are some exception[s].  So the question is, what are the exceptions?  That's what I'm looking at in this section."); *id.* at 13:15-16:6 (wherein Dr. Starr lists the legitimate business interests set forth in Fla. Stat. § 542.335(1)(b) and his analysis of those interests to the facts of this case).  Indeed, the following exchange best encapsulates Dr. Starr's work:

> Q. It sounds like you look to see what Florida law provides.  You kind of survey the evidence in this case.  And ultimately you say that it's difficult to see the legitimate business interest here.  Do I have that right?
>
> . . .

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

A. *Yeah, right*.  I think it is difficult to see the legitimate business interest.

*Id.* at 17:6-17 (emphasis added).  Dr. Starr's tracking the language of a statute and applying the facts of this case to that statute are precisely the type of legal opinions courts have found to be improper.  *See, e.g.*, *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (noting that opinions that "track[ed] the language of the applicable statute" constituted an "impermissible legal conclusion."); *Pleasant Valley Biofuels, LLC*, 2014 WL 2855062, at *5.

Dr. Starr's improper legal opinions are not limited to his interpretation of Florida statutes or case law interpreting restrictive covenants.  Dr. Starr—a non-attorney with no formal legal training[7]—wades further into improper legal opinion territory by offering his interpretation of contractual provisions in the Employment Agreements, which he then attempts to tie back to federal anti-kickback statutes known as the "Stark Law."  *Id.* at 33-34 and n.47.[8]  This, too, is improper legal opinion.  *See Montgomery*, 898 F.2d at 1541 (excluding expert who opined that the defendant had a contractual duty because "[t]his was a legal conclusion, and therefore should not have been admitted"); *Maltez v. Trepel Airport Equip. GMBH*, 2017 WL 5903556, at *7 (S.D. Fla. Nov. 30, 2017 ("[The expert] is not an attorney,

---

[7] *See generally* Ex. 1, Starr Rep., App'x A1: Curriculum Vitae, at 53.
[8] Dr. Starr also provides opinions as to the meaning of various other provisions in the Employment Agreements.  *See id.* at 31-32 (interpreting noncompete language); *id.* at 39 (interpreting section 3.8 of the Agreements).

13

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

let alone an attorney specializing in contracts. . . contract interpretation is an issue of law and cannot be the subject of expert testimony.").

Tellingly, Dr. Starr also couches many of his "opinions" as "arguments."  It is clear from their context that these "arguments" belong in a legal brief, not an expert report.  *See* Ex. 1, Starr Rep. at 3 ("The *argument* that firms need courts to enforce noncompetes in order to incentivize investment in the business is unlikely to hold in the healthcare industry.") (emphasis added); *id.* at 3 ("As written, HMA's covenants not to compete undermine the *argument* that these noncompetes are necessary . . . .") (emphasis added); *id.* at 35 (asserting that Scott Phillips "makes no *argument* for what 'special facts'" above and beyond ordinary competition (as discussed in *White*) may be necessary to establish a legitimate business interest) (emphasis added). At bottom, these opinions "offer[ ] nothing more than what lawyers for the parties can argue in closing arguments."  *Cook*, 402 F.3d at 1111; *Frazier*, 387 F.3d at 1262-63; *Cordoves*, 104 F. Supp. 3d at 1365 (excluding expert's rebuttal report because it was "a legal argument for the lawyers to make, not [the expert].").

What is more, Florida Statute § 542.335 requires a *court* to determine the enforceability of a restrictive covenant and provides that a *court* can find a restrictive covenant unenforceable on the grounds of public policy only if a public policy requirement "is articulated specifically by the *court* and the *court* finds that the

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

specified public policy requirements substantially outweigh the need to protect the legitimate business interests." Fla. Stat. § 542.335(1)(i) (emphasis added). Dr. Starr's ultimate opinion—that the PRMC Noncompete is "detrimental to the public health, safety, and welfare" and that "[t]he public policy effects of HMA's noncompete outweigh any potential business interest" (Ex. 1, Starr Rep. at 2-3)— would be a blatant usurpation of the Court's role if these issues were even relevant in the first instance (they are not). Thus, these would be issues for the Court to resolve, not a putative expert.

Dr. Starr attempts to sidestep his provision of improper legal opinions by professing that he is not "telling the Court what to do" (Ex. 2, Starr 2020 Tr. at 237:3-4), and is only using the case law and statutes as "guideposts." *Id.* at 94:16-95:1. These disclaimers are meaningless considering the actual substance of his opinions, however, and case law prohibits Dr. Starr from using a "public policy" veneer to offer impermissible legal opinions to the jury. Simply put, Dr. Starr's report is "replete with legal opinion," thus rendering his testimony improper, unhelpful, and ultimately subject to exclusion under *Daubert*. *Commodores Entm't*, 879 F.3d at 1129.

### C.   Dr. Starr's Report is Misleading and Unhelpful for Additional Reasons.

#### 1.   *Dr. Starr's Opinions are Based on Rank Speculation*

"Courts are cautioned not to admit speculation, conjecture, or inference that

15

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

cannot be supported by sound scientific principles.  The courtroom is not the place for scientific guesswork, even of the inspired sort." *Hendrix*, 609 F.3d at 1194.

Along these lines, "an expert may not speculate as to a person's state of mind or simply recount the facts and then offer an opinion as to the conclusion which the jury should reach." *In re 3M Combat Arms Earplug Products Liab. Litig.*, 2021 WL 765019, at *40 (quoting *Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006)) (internal quotation marks and alterations omitted).  It is inappropriate for experts to opine as what other individuals "knew, what they intended, or what their motives were. . . . Such determinations are properly made by the factfinder." *Id.* at *42 (collecting cases) (internal citations and quotations omitted); *see also United States v. Hawkins*, 934 F.3d 1251, 1263 (11th Cir. 2019) (reversing criminal conviction where expert testified on matters that "strayed into speculation and unfettered, wholesale interpretation of the evidence.").

Even though experts are not permitted to speculate—especially as to what others might have been thinking—Dr. Starr spends much of his report doing just that.  For example, Dr. Starr assails the PRMC Noncompete as being against public policy because it causes physician-patient relationships to be severed.  Ex. 1, Starr Rep. at 31–42.  More specifically, Dr. Starr contends that had the Physicians "abided by the terms of their noncompete, 15,879 patients would have involuntarily had their relationship with their physician severed." *Id.* at 40-41.  This conclusion is based on

16

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

Dr. Starr's assumption that had the PRMC Noncompete precluded the Physicians from working at NCH, that "would have *likely* caused the [P]hysicians to either leave the market or sit out of the market during the noncompete period." *Id.* at 38 (emphasis added).  This is pure conjecture, unmoored from any evidence in this case.[9]

When asked about this passage at his deposition, Dr. Starr admitted that his *belief* as to what the Physicians would have done was mere speculation.  *See* Ex. 3, Starr 2021 Tr. at 96:4-11.  Indeed, Dr. Starr repeatedly admitted throughout that he was engaging in rank speculation on this point. *Id.* at 76:2-8 ("A. Murphey is not clear on the psychology of his decisions here on why he chose NCH . . . But what we can *infer*, based off of the choice that he made . . . .") (emphasis added); *id.* at 97:20-24 ("A. . . .But if you would have asked him the question if you couldn't work at NCH or Millennium, then *I wonder* what his answer would have been.  I think *that's what we are speculating about*.") (emphasis added); *id.* at 100:11 ("A. . . . So all of this is speculation, right?").[10]

---

[9] In fact, Dr. Starr's opinion is directly contrary to NCH's damages expert, John Gale, who has opined that the Physicians necessarily would have secured post-PRMC employment in the Naples community.  *See* Supplemental Report of John Gale, attached as Exhibit 4, at 4.

[10] Dr. Starr's speculative theories that the Physicians would have left or sat out of the market had they been unable to join NCH is also contrary to the record evidence and flatly *contradicted* by the Physicians' own testimony.  *See* Ex. 3, Starr 2021 Tr. 59:20-62:6 and attached Exhibit 5 (Dr. Monica Menichello testified she had other feasible options in the market); *id.* at 70:4-73:14 and attached Exhibit 6 (same as to Dr. Murphey); *id.* at 80:13-83:17 and attached Exhibit 7 (same as to Dr. Portu).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Worse yet, Dr. Starr's speculation was not limited to the Physicians' motivations. Dr. Starr opines about other physicians who departed PRMC between 2014 and 2018 to further posit that the PRMC Noncompete caused additional severed physician-patient relationships. *See* Ex. 1, Starr Rep. at 39-40. Specifically, Dr. Starr categorizes the physicians who terminated their employment into those that: (1) retired; (2) left the market; (3) joined NCH; or (4) continued to practice in the market but did not join NCH. *Id.* at 40. Of the PRMC physicians that retired, Dr. Starr contends that all of the patient relationships attributable to those retiring physicians were severed *as a consequence of* the PRMC Noncompete. *Id.* But when asked how he knew that the PRMC Noncompete *caused* these physicians to retire, Dr. Starr admitted that he did not speak with any of them, did not know why they retired, and did not even know their ages—he was just speculating that if they retired, it must have been because of the PRMC Noncompete. Ex. 3, Starr 2021 Tr. at 111:21-112:12; 113:15-115:7; 116:2-8; 117:12-16. Dr. Starr similarly concluded that any physician who relocated to another market after departing PRMC must have done so because of the PRMC Noncompete. *Id.* at 118:4-125:7. Indeed, it took seven pages of (mostly non-responsive) testimony for Dr. Starr to finally concede that it was "possible" that some of the physicians who relocated did so for reasons unrelated to the PRMC Noncompete. *Id.* at 124:18-24.[11]

---

[11] During his first deposition, Dr. Starr was far less certain why these physicians left the area, as

18

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

The Court should not subject a jury to Dr. Starr's musings about what he thinks the evidence reveals.  Dr. Starr's opinions about his view of the evidence are all the more inappropriate because a jury may "place[] the imprimatur of 'expertise' on [Dr. Starr's] view of the facts of the case."  *Hawkins*, 934 F.3d at 1266.

> ## 2. *Dr. Starr's Parroting Lay Witness Testimony is Unhelpful to the Trier of Fact.*

In his report, and repeatedly throughout both of his depositions, Dr. Starr simply parroted the deposition testimony of the Physicians (often reading directly from the transcript) regarding their alleged "unhappiness" while employed at PRMG.  *E.g.*, Ex. 1, Starr Rep. at 37-38, 42-45; Ex. 2, Starr 2020 Tr. at 168:19-169:11; 243:18-244:3.  In fact, he did this repeatedly at deposition even when the question had *nothing to do* with that testimony.  *Id.* at 168:17-169:11.  In response to a question at his last deposition asking him to acknowledge that NCH was actively recruiting the Menichellos, Dr. Starr "pull[ed] up one of [his] quotes" and proceeded to provide three-pages worth of summation about other lay witness testimony.  Ex. 3, Starr 2021 Tr. 64:17-67:8.  Perhaps the most egregious example occurred at the conclusion of his most recent deposition when Dr. Starr spent two pages reading

---

he was repeatedly forced to admit that he did not "understand why they [the physicians who purportedly left the area] made the decisions they did."  *See* Ex. 2, Starr 2020 Tr. at 152:25-153:8; *id.* at 152:8-10 ("As I stated in my report, *it is not clear why they [the physicians] left* and more research should be done to ascertain if that was the case.") (emphasis added); 164:4-7 ("I think that my report very clearly indicates that we should dig into why these individuals left and *whether it was due to the noncompete agreement…*") (emphasis added); *id.* at 167:18-25.  Even though Dr. Starr had an additional year to "dig into" why these physicians left, he never did so.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

from one of the Physician's affidavits in response to "I don't have any further questions." *Id.* at 163:7-165:1.

Parroting the testimony of other fact witnesses does not require any sort of expertise and is instead something properly left to the lawyers to argue. *See, e.g.*, *Coquina Invs. v. Rothstein*, 2011 WL 4949191, at *5 (S.D. Fla. Oct. 18, 2011) (holding that expert opinions summarizing evidence such as documents and deposition testimony "are unhelpful to the trier of fact"); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d at 1345–46 (excluding expert opinion consisting of nothing more than "summaries" of the defendant's regulatory history and other "internal documents"); *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 804 (N.D. Ill. 2005) (observing that expert's "lengthy quotations of testimony by other witnesses" was better advanced by lawyers).[12] Thus, for this additional reason, the opinions that Dr. Starr draws based on these portions of his report are also improper under *Daubert*.

\*\*\*

Dr. Starr's opinions are completely irrelevant to the claims and defenses in this action and the ultimate issues before the Court, and (even if deemed relevant)

---

[12] As referenced below, excessive parroting of lay witness testimony also reflects a lack of a reliable methodology. *See Cordoves v. Miami-Dade Cty*, 104 F. Supp. 3d 1350, 1363 (S.D. Fla. 2015) ("[The expert] admitted his [opinion] is based solely on his conversations with [lay witnesses] and not on anything he observed or any records or documents he reviewed. This is no more than *ipse dixit* and parroting of lay witness testimony—certainly not a reliable methodology.").

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

consist of nothing more than legal conclusions or arguments better suited for attorneys in their legal briefing or at closing argument.  As such, the opinions should be excluded because they fail to assist the trier of fact pursuant to *Daubert* and Rule 702.

## II.     Dr. Starr Did Not Employ Any Reliable Methodology in Reaching His Opinions About the Alleged Causal Impacts of the PRMC Noncompete.

Both in his Report and at his deposition, Dr. Starr clearly articulated the level of intellectual rigor that characterizes the practice of an expert in his field.  In his report, he states that "the power of empirical evidence cannot be overstated" and that "anecdotes only go so far in terms of their generalizability."  Ex. 1, Starr Rep. at 26, 30.  At his deposition, he likewise emphasized that "anecdotes ultimately, at the end of the day may not tell the whole story," and that "the goal is to disentangle" anecdotal or theoretical work "by doing careful empirical analysis."  Ex. 2, Starr 2020 Tr. 23:17-24:1; 42:21-23.  Dr. Starr also emphasized that if the empirical data is at odds with the anecdotal evidence, "then I think *there's more digging to do*."  *Id.* at 27:1-19 (emphasis added).

Yet, all of Dr. Starr's opinions about the effects of the PRMC Noncompetes are based on anecdotes, not empirical data.  Specifically, Dr. Starr opined that:

- the PRMC Noncompete led to severed patient-physician relationships. Ex. 1, Starr Rep. at 36-38, 39-43.  But as discussed above, that opinion was not based on an empirical analysis of data, but rather his speculation that physicians retired and left the geographical area because of the PRMC Noncompete, and his speculation that the

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Physicians would have sat out or left the area had they been unable to work at NCH.  *See* Section I.C., *supra*.

- "[e]nforcing the noncompetes is *likely* to lead to lower quality care." Ex. 1, Starr Rep. at 42-47 (emphasis added).  Here again, Dr. Starr did not conduct any empirical analyses; rather, he summarized testimony and documents produced in this case to reach that conclusion.  The "methodology" he used in reaching this conclusion—reading depositions and the parties' document production—is especially inappropriate considering that Dr. Starr has absolutely no qualifications in healthcare and is not qualified to opine as to what may lead to lower quality of care.[13]  He is simply offering this opinion based on the say-so of the Physicians (who have their own biases).[14]

- "[e]nforcing the noncompete is *likely* to lead to reduced access to care." *Id*. at 47 – 48 (emphasis added).  Once again, Dr. Starr did not perform any empirical analysis; he merely cites to "[t]he evidence documented in the previous sections . . . [,]" and cites to the deposition testimony of a former NCH employee.  *Id.*

- "[e]nforcing the noncompetes is *likely* to lead to higher prices."  *Id.* at 48-49 (emphasis added).  In reaching this conclusion, Dr. Starr again relies only on the anecdotal testimony of a former NCH executive and a document Plaintiffs produced in discovery.  *Id.*; *see also* Ex. 3, Starr 2021 Tr. 146:19-147:2.  Dr. Starr did not analyze paid claims data, or any other data for that matter, in reaching his conclusion.  *Id.* at 147:19-

---

[13] Dr. Starr testified that he has never: taken any courses involving healthcare or the healthcare industry; conducted any studies involving healthcare while enrolled in his doctoral program; worked in the healthcare industry; or published any studies specifically addressing physician restrictive covenants.  *See* Ex. 2, Starr 2020 Tr. 31:2-6; 34:4-10; 39:22-40:4; 42:9-11.

[14] Reliance on anecdotes does not pass muster under *Daubert*.  *See In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1298 (M.D. Fla. 2007) (excluding anecdotal consumer complaints as unreliable basis for opinion because "the events were not observed in such a way as to rule out coincidence or other potential causes"); *Mosby v. Railey*, 2005 WL 8159837, at *3 (M.D. Fla. July 29, 2005) (excluding expert opinions based on "qualitative interviews" with similarly situated individuals as unreliable); *Affiliati Network, Inc. v. Wanamaker*, 2017 WL 7361048, at *9 (S.D. Fla. Aug. 14, 2017) (excluding expert opinion based on "anecdotal complaints by anonymous sources" that expert had failed to verify); *Payne v. C.R. Bard, Inc.*, 2014 WL 988754, at *8 (M.D. Fla. Mar. 13, 2014), *aff'd,* 606 F. App'x 940 (11th Cir. 2015) (excluding expert who only relied on "three deposition transcripts" and several scholarly articles, reflecting that his opinions had been "developed solely in the context of [the] litigation").

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

149:18; 150:14-152:23.[15]

Dr. Starr admitted that "[c]onducting empirical analysis of data was not in the scope of [his] charge."  Ex. 2, Starr 2020 Tr. at 57:14-19.  Indeed, the inherent weakness in Dr. Starr's methodology is underscored by his concession that he would need "more evidence [] from an empirical standpoint" before he could conclude that all physician noncompetes are likely to cause harm to the public.  *Id*. at 309:11-24.  But this did not stop him from drawing those very same conclusions as to the PRMC Noncompete in this case.  Thus, none of his opinions about the causal effects of the PRMC Noncompete come anywhere close to meeting the rigors of *Daubert*.  Rather, it is clear that "what's going on here is not science at all, but litigation." *Daubert*, 43 F.3d at 1318.  His opinions should be excluded on this basis as well.

## III.   Alternatively, Dr. Starr's Opinions Should be Excluded Under Fed. R. Evid. 403.

Even if Dr. Starr's opinions were admissible under *Daubert* (they are not), Rule 403 still requires their exclusion.  "Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements [of Rule 702] may still be excluded by applying Rule 403." *Frazier*, 387 F.3d at 1263 (internal citations and footnote omitted).  "Exclusion under Rule 403 is appropriate if the probative value of otherwise

---

[15]  Dr. Starr was not even familiar with paid claims data, so he would not have known how to assess any fluctuation in health care prices even if he wanted to.  Starr 2021 Tr. at 149:21-150:1.



LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

admissible evidence is substantially outweighed by its potential to confuse or mislead the jury . . ..” *Id.* Because “expert testimony may be assigned talismanic significance in the eyes of lay jurors . . . [,] district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.” *Id.*

Dr. Starr’s report and anticipated testimony, taken as a whole, are *not* designed to assist the jury in understanding the evidence or determine a fact in issue. Rather, his anticipated testimony will be geared to inflame the jurors and paint Plaintiffs as villains who treat their doctors poorly, sever physician-patient relationships, lower the quality of medical care, lead to less access to medical care, and cause the prices of health care to rise in the community. *See generally* Ex. 1, Starr Rep. NCH is no doubt hopeful that after Dr. Starr testifies and summarizes the evidence allegedly in support of this parade of horribles, no jury would be inclined to award Plaintiffs any damages for the torts NCH inflicted upon them. This is precisely the type of expert testimony the Eleventh Circuit warned of in *Frazier*, and the reason why Dr. Starr’s opinions are independently subject to exclusion under Fed. R. Evid. 403. They should therefore be excluded in their entirety.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court exclude the opinions and testimony of Evan Starr, Ph.D. in their entirety, and grant any further relief that the Court deems just and proper.

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Counsel for parties met and conferred by telephone on November 15, 2021, and counsel for NCH advised at that time that they are opposed to the relief sought herein.

Dated: November 15, 2021

Respectfully Submitted:

**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, Florida 33131
(305) 347-4040 Fax: (305) 347-4050
Attorneys for Plaintiffs

By:   /s/*Jonathan E. Feuer*
     **ALAN D. LASH**
     Florida Bar No. 510904
     alash@lashgoldberg.com
     **JONATHAN E. FEUER**
     Fla. Bar No. 0068752
     jfeuer@lashgoldberg.com
     **EMILY L. PINCOW**
     Florida Bar No. 1010370
     epincow@lashgoldberg.com

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, in which the persons on the Service List below are participants.

By: /s/ *Jonathan E. Feuer*
**Jonathan E. Feuer**

## <u>SERVICE LIST</u>

**Edward K. Cheffy**
Florida Bar No. 393649
**Rachael S. Loukonen**
Florida Bar No. 668435
**Kimberly D. Swanson**
Florida Bar No. 1018219
**CHEFFY PASSIDOMO, P.A.**
821 Fifth Avenue South, Suite 201
Naples, Florida 34102
(239) 261-9300 Telephone
(239) 261-9782 Facsimile
ekcheffy@napleslaw.com (primary)
ahreiss@napleslaw.com (primary)
rloukonen@napleslaw.com (primary)
ffharper@napleslaw.com (secondary)
nmtelischak@napleslaw.com (secondary)
raricci@napleslaw.com (secondary)
*Attorneys for Defendants*

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel