UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

COLLIER HMA PHYSICIAN
MANAGEMENT, LLC,

    Plaintiff,

v.                          Case No.:  2:18-cv-408-SPC-MRM

NCH HEALTHCARE SYSTEM, INC.,
NAPLES COMMUNITY HOSPITAL,
INC. and NCHMD, INC.,

    Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendants NCH Healthcare System, Inc., Naples Community Hospital, Inc. and NCHMD, Inc.'s Motion for Reconsideration (Doc. 234), along with Plaintiff Collier HMA Physician Management, LLC's opposition (Doc. 238). For the below reasons, the Court denies Defendants' Motion.

This case is about Collier and Defendants vying to employ (and thus profit off) the same doctors. Collier claims that Defendants tortiously

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

interfered with its contractual relationships with seven doctors. Defendants allegedly induced the doctors to end their employment contracts early by offering them jobs and telling them the noncompete provisions in the contracts were unenforceable. To recover the millions lost, Collier sued Defendants for tortious interference with a contractual relationship, conspiracy, and unfair competition.

The Court granted Collier's summary judgment motion against Defendants and dismissed five denials in their Answer. (Doc. 222 at 12-15). It also found that dismissing the denials affected the relevancy of Defendants' public policy expert, Evan Starr, Ph.D. Because the Court dismissed the denials, it excluded Dr. Starr's report. (Doc. 222 at 15; *see also* Doc. 192-1). Defendants now move the Court to reconsider excluding the report, arguing its relevant to other affirmative defenses.

"Under Federal Rule of Civil Procedure 59(e), a party may ask a district court to reconsider an earlier ruling." *Hill v. Escambia Cnty. Sherriff's Off.*, No. 21-10631, 2022 WL 1297809, at *3 (11th Cir. May 2, 2022). But reconsideration under Rule 59(e) is not all encompassing. It is appropriate to correct "manifest errors of law or fact." *Jenkins v. Anton*, 922 F.3d 1257, 1263 (11th Cir. 2019). It may also be used to account for intervening changes in law and newly discovered (or previously unavailable) evidence. *See Banister v. Davis*, 140 S. Ct. 1698, 1703 n.2 (2020). And lastly, a Rule 59(e) motion might

2

work "if there is a need to correct a manifest injustice." *E.g.*, *LLC SPC Stileks v. Rep. of Mold.*, 985 F.3d 871, 882 (D.C. Cir. 2021).

The decision to reconsider "is committed to the sound discretion of the district judge." *United States v. Jim*, 891 F.3d 1242, 1252 (11th Cir. 2018) (citation omitted). They are granted sparingly, and Rule 59(e) is not a mechanism "relitigate old matters." *Grange Mut. Cas. Co. v. Slaughter*, 958 F.3d 1050, 1059-60 (11th Cir. 2020) (citation omitted). Nor will the court "address new arguments or evidence that the moving party could have raised before the decision issued." *Banister*, 140 S. Ct. at 1703. "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *U.S. ex rel. Matej v. Health Mgmt. Assocs.*, 869 F. Supp. 2d 1336, 1348 (M.D. Fla. 2012) (citation omitted).

Defendants hired Dr. Starr to opine on the enforceability of noncompete provisions in the healthcare industry generally, and in the doctors' contracts ("Agreements"). Here's what Dr. Starr was retained to do:

- To describe the theoretical arguments and empirical evidence related to effects of noncompete agreements and noncompete enforcement policies generally, and physician noncompete agreements more specifically.

- To assess the extent to which there are public policy concerns related to the enforcement of physician noncompete agreements.

- To evaluate how these arguments and evidence apply to the particular facts of the case at hand. Specifically, and with the understanding that Florida law provides

3

> that contracts in restraint of trade are enforceable under certain circumstances:
>
> - From an economic perspective, what are the anticompetitive and procompetitive interests given the particular facts in this case?
>
> - What is the likely effect of the enforcement of HMA's particular restrictive covenant upon the public health, safety, and welfare of the community?

(Doc. 192-1 at 2). Dr. Starr's overarching conclusion is that *enforcing* the noncompete provision in the Agreements would be "detrimental to the public health, safety, and welfare, and ultimately results in burdens and costs that the patients will bear through severed physician relationships, higher healthcare prices, reduced quality of care, and reduced access to care." (Doc. 192-1 at 53).

Because Collier's motion for summary judgment focused only on five denials, so did the Court's analysis. It found the denials to be immaterial to the tortious interference claims because, even if the noncompete provisions were void, the Agreements still stood under the severability clauses. (Doc. 222 at 14-15). So whether the noncompete provisions were unenforceable for the reasons stated by Dr. Starr was simply irrelevant. (Doc. 222 at 15).

Defendants now shift gears to argue the relevancy of Dr. Starr's report was not limited to the denials—it is also important to their remaining Second and Third Affirmative Defenses. In those defenses, Defendants pled their

4

conduct in hiring Collier's doctors was justified and privileged for two reasons. First, they argue the Agreements "were terminable at will, Collier and Defendants are competitors, and Defendants advanced their business and financial interests by hiring the physicians" (Second Affirmative Defense). Second, they assert "Defendants' actions advanced societal interests related to protecting freedom of action between patients and their physicians, which the law considers to be of equal or greater value than the contractual or legal rights allegedly infringed by Defendants' actions" (Third Affirmative Defense). (Doc. 47 at 14-15).[2]

Whether Defendants' conduct was justified or privileged is a required element of Collier's tortious interference claim.[3] *See Johnson Enters. of Jacksonville v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998). With that backdrop, Defendants turn to Dr. Starr's report and cherry-pick three sub-

---

[2] As an aside, the Second and Third Affirmative Defenses are not true affirmative defenses by which Defendants must prove. Defendants even concede as much. So in reality, the Second and Third Affirmative Defenses merely highlight a defect in Plaintiff's prima facie case. *See In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Although this isn't reason to strike the Second and Affirmative Defenses, the Court wants to clarify the record. *See M.B.K. Sales, LLC. v. Designs by FMC, Inc.*, No. 2:19-cv-643-FTM-38MRM, 2020 WL 10356024, at *4 (M.D. Fla. June 26, 2020).

[3] Plaintiff's only remaining claims are tortious interference with a contractual relationship, conspiracy to tortiously interfere with a contractual relationship, and unfair competition. (Doc. 222 at 28; Doc. 228). The Court dismissed any claims related to a tortious interference with a business relationship. Nevertheless, Defendants discuss the latter tort in their Motion. Although the justification element overlaps both torts, the Court (again) reiterates only a tortious interference with a contractual relationship claim exists. Going forward, the parties must cite the correct tort and provide appropriate case law.

5

opinions, arguing they relate to the justification issue: (1) "The public policy effects of [Plaintiff's] noncompete outweigh any potential business interest"; (2) "Enforcing [Plaintiff's] noncompetes leads to lower quality healthcare"; and (3) "Enforcing [Plaintiff's] noncompetes reduces access to health care, exacerbating a local shortage of physicians." (Doc. 234 at 4 (citing Doc. 192-1 at 2-4)).

Best the Court can tell, Defendants want to use Dr. Starr's opinion that noncompete provisions—generally and for the doctors in this case—make for bad policy so Defendants were justified or privileged in hiring them while they still worked for Collier. (Doc. 238 at 3). But that argument misses the mark. Dr. Starr's report focuses only on why the Court should not *enforce* the noncompete agreements. Yet for the reasons stated in its Order on summary judgment, whether the noncompete provisions are enforceable is irrelevant to the claims at issue. To be clear, Collier does not argue that Defendants tortiously interfered with the noncompete provisions. Their claims focus on the Agreements as a whole. So whether the noncompete provisions are wrong for public policy reasons, as Dr. Starr so opines, is irrelevant to whether Defendants lacked justification or a privilege in hiring the doctors. Bringing

6

back Dr. Starr's report will only add confusion for the jury in deciding the claims.[4]

One final point.  The Court noted in its Order, "To the extent that Defendants argue the validity of the noncompete provisions affect its Second and Third Affirmative defenses, neither side moved for summary judgment on them and neither side argues how dismissing the Denials will prevent Defendants from arguing those defenses later.  (Doc. 202 at 16-18)." (Doc. 222 at 15 n.12).  Thus, Defendants suggesting the Court ignored its arguments on those defenses is not true.  Defendants mentioned them to argue why the noncompete provisions were unenforceable.  And it did the same in opposing the exclusion of Dr. Starr's report.  (Doc. 201 at 6-9 ("There, Dr. Starr's testimony relating to public policy considerations that may render the *restrictive covenant* void are extremely relevant and will be helpful to the Court and jury.")).  Those arguments are not relevant—then or now.  (Doc. 222 at 15 n.12).

In conclusion, Defendants have shown no manifest errors of law or fact to correct, intervening changes in the law, newly discovered evidence, or a need to fix a manifest injustice to warrant the requested reconsideration.

---

[4] The Court is also perplexed that Defendants want to advance an argument that they were justified or privileged in hiring the doctors because they essentially freed the doctors from Plaintiff's detrimental noncompete provisions that harmed the public when the same doctors have now signed noncompete provisions with Defendants.  The irony isn't lost.

7

Accordingly, it is now

**ORDERED:**

Defendants NCH Healthcare System, Inc., Naples Community Hospital, Inc. and NCHMD, Inc.'s Motion for Reconsideration (Doc. 234) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on May 16, 2022.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record